AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 26 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of                )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)*  )     Case No.    MJ19 - 342
6520 28th Avenue South                         )
Seattle, Washington                            )
                                               )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
6520 28th Avenue South, Seattle, Washington, more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1030(a)(2) and (5) | Computer Fraud/Hacking |

The application is based on these facts:

✓   See Affidavit of FBI SA Joel Martini, continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or ☐ telephonically recorded.

*Applicant's signature*

Joel Martini, FBI Special Agent
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
◯ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  July 26, 2019

*Judge's signature*

City and state:  Seattle, Washington          Mary Alice Theiler, United States Magistrate Judge
                                              *Printed name and title*

USAO: 2019R00675

**AFFIDAVIT**

STATE OF WASHINGTON     )
                             )    ss

COUNTY OF KING            )

I, Joel Martini, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation (FBI), currently assigned to the Seattle Field Office, and have been so employed since January 2017. I am assigned to the Cyber Squad, where I investigate computer intrusions and other cybercrimes. I have received training, and gained experience in, interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, cybercrimes, computer evidence identification, computer evidence seizure and processing, and criminal law and procedures. I have received advanced training in the acquisition and analysis of digital evidence (both network and host-based) responding to computer intrusions and other incidents. I have participated personally in the execution of search warrants involving the search and seizure of computer equipment.

2.    Prior to my employment as a Special Agent, I received a Bachelor of Science in Information Systems from Corban University. I also subsequently worked as a Computer Forensic Examiner for the FBI for approximately five years. During the course of that employment, I became familiar with the design and operation of various electronic devices, networks, and websites, including the technology described herein.

3.    I currently am conducting an investigation of Paige Adele Thompson, also known by the alias "erratic," for intruding into servers rented or contracted by Capital One Financial Corporation ("Capital One"), a financial services company, from Amazon.com, Inc. ("Amazon"), a company that provides cloud computing services, and for exfiltrating and

AFFIDAVIT OF SA MARTINI - 1
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  stealing information, including credit card applications and other documents, from Capital

2  One.

3       4.     I make this affidavit in support of an application for a warrant to search

4  Thompson's residence, located at 6520 28th Avenue South, Seattle, Washington (hereinafter,

5  "the SUBJECT RESIDENCE"), further described in Attachment A to this Affidavit,

6  including any computers, cellular telephones, electronic storage media, and other devices

7  located in that residence, for evidence, fruits, and instrumentalities of computer

8  fraud/hacking, in violation of Title 18, United States Code § 1030(a)(2) and (5), listed in

9  Attachment B to this Affidavit.

10       5.     The facts set forth in this Affidavit are based on my own personal knowledge,

11  including interviews I have conducted and my review of documents related to this

12  investigation; information obtained from other individuals, including other law enforcement

13  officers and investigators and employees of Capital One; and my training and experience.

14  Because this Affidavit is submitted for the limited purpose of establishing probable cause in

15  support of the application for a search warrant, it does not set forth each and every fact that I

16  or others have learned during the course of this investigation, but rather those relevant to the

17  determination of whether probable cause exists to issue the requested search warrant.

18  ## II.     THE SUBJECT RESIDENCE

19       6.     The SUBJECT RESIDENCE is located at 6520 28th Avenue South, Seattle,

20  Washington, and is a grey one-story house with a partial brick facade on the front, and white

21  window frames and eaves.  The number 6520 appears to the right side of the front door.  The

22  SUBJECT RESIDENCE is shown in the photograph in Attachment A, which is attached

23  hereto and incorporated herein.

24  ## III.     SUMMARY OF PROBABLE CAUSE

25       7.     The FBI is conducting an investigation into a network intrusion into servers

26  rented or contracted by Capital One from Amazon.  Capital One is a financial services

27  company that, among other things, issues credit cards.  The evidence in this case shows that

28

AFFIDAVIT OF SA MARTINI - 2
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Thompson, who resides at the SUBJECT RESIDENCE, is the person who committed this
2  intrusion.

3       8.     Evidence linking Thompson to the intrusion includes the fact that information
4  obtained from the intrusion has been posted on a GitHub page that includes Thompson's full
5  name – paigeadelethompson – as part of its digital address, and that is linked to other pages
6  that belong to Thompson and contain her resume. In addition, records obtained from Capital
7  One indicate that Internet Protocol addresses used by the intruder are controlled by a
8  company that provides virtual private network services and that was used by Thompson to
9  make postings on the internet service GitHub, including very close in time to intrusions.
10  Moreover, Thompson also has made statements on social media fora evidencing the fact that
11  she has information of Capital One, and that she recognizes that she has acted illegally.

12       9.     Thompson resides at the SUBJECT RESIDENCE, and has done so at all times
13  material to this investigation.  As a result, there is probable cause to believe that Thompson
14  committed some or all of the illegal activity being investigated from the SUBJECT
15  RESIDENCE, and that evidence of that illegal activity will be found at the SUBJECT
16  RESIDENCE, including on any computers, cellular telephones, and electronic storage media
17  that may be found in that residence.

18                 **IV.**    **TERMS AND DEFINITIONS**

19       10.    For the purpose of this affidavit, I use the following terms as described below:
20            a.     A server is a computer that provides services for other computers
21  connected to it via a network or the Internet.  The computers that use the server's services are
22  sometimes called clients.  Servers can be physically located anywhere with a network
23  connection that may be reached by the clients.  For example, it is not uncommon for a server
24  to be located hundreds (or even thousands) of miles away from client computers.  A server
25  may be either a physical or virtual machine.  A physical server is a piece of computer
26  hardware configured as a server with its own power source, central processing unit or units,
27  and associated software.  A virtual server typically is one of many servers that operate on a
28  single physical server.  Each virtual server shares the hardware resources of the physical

AFFIDAVIT OF SA MARTINI - 3
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  server, but the data residing on each virtual server is segregated from the data on other

2  virtual servers on the same physical machine.

3        b.     An Internet Protocol address (an "IP address") is a unique numeric

4  address used by devices, such as computers, on the internet.  Every device attached to the

5  internet is assigned an IP address, so that internet traffic sent from, and directed to, that

6  device may be directed properly from its source to its destination.  Most internet service

7  providers control a range of IP addresses.  Generally, a static IP address is permanently

8  assigned to a specific location or device, while a dynamic IP address is temporary and

9  periodically changes.

10        c.     The Onion Router (or "TOR") is an anonymity tool used by individuals

11  to conceal their identities, including the origin of their internet connection, that is, their IP

12  addresses.  TOR bounces communications through several intermediate computers (relays),

13  each of which utilizes encryption, thus anonymizing the IP address of the computer of the

14  individual using TOR.

15        d.     A virtual private network (a "VPN") is a secure connection over a less

16  secure network, such as the internet.  A VPN uses shared public infrastructure, but maintains

17  privacy through security procedures and tunneling protocols.  It encrypts data at the sending

18  end, decrypts it at the receiving end, and sends the data through a "tunnel" that cannot be

19  "entered" by data that is not properly encrypted.  A VPN also may encrypt the originating

20  and receiving network addresses.

21      11.    Throughout this Affidavit, I also refer to a number of companies and to

22  services that they offer:

23        a.     GitHub is a company that provides webhosting and allows users to

24  manage and store revisions of projects.  Although used mostly for software development

25  projects, GitHub also allows users to manage other types of files.

26        b.     IPredator is a company that offers prepaid VPN service to customers,

27  using servers based in Sweden.

28

AFFIDAVIT OF SA MARTINI - 4
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          c.      Meetup is an Internet-based platform designed to let people find and

2 build local communities, called "groups."

3          d.      Slack is a cloud-based set of team-collaboration software tools and

4 online services.  Slack allows users to establish "channels," in which a team can share

5 messages, tools, and files.

6          e.      Twitter is company that operates a social networking site that allows

7 users to establish accounts, post short messages, and receive other users' messages.

8 V.      **THE INVESTIGATION**

9 **A.**    **The Intrusion and Exfiltration**

10      12.    Capital One is a financial services company that offers, among other products,

11 credit cards.  Capital One maintains an e-mail address through which it solicits disclosures of

12 actual or potential vulnerabilities in its computer systems, so that Capital One can learn of,

13 and attempt to avert, breaches of its systems.  Among others who send e-mails to this address

14 are individuals who sometimes are called "ethical" or "white hat" hackers.  Like other

15 companies, Capital One often will make payments to individuals who provide information

16 concerning actual or potential vulnerabilities.

17      13.    On July 17, 2019, an individual – who previously was unknown to Capital One

18 - emailed this e-mail address.  The individual's e-mail stated that there appeared to be leaked

19 data belonging to Capital One on GitHub, and provided the address of the GitHub file

20 containing this leaked data.  The address provided for this file was

21 https://gist.github.com/paigeadelethompson/*****.  [Throughout this affidavit, I use *****

22 to substitute for other characters, often more than five characters.]  Significantly, this address

23 includes the name paigeadelethompson, which I know to be Thompson's full name.  The

24 individual providing this information offered to help track down the person who had posted

25 this information.  The individual providing the information also subsequently has indicated

26 that he/she hopes to be paid for providing the information.

27      14.    After receiving this information, Capital One examined the GitHub file, which

28 was timestamped April 21, 2019 (the "April 21 File").  Capital One determined that the April

AFFIDAVIT OF SA MARTINI - 5
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  21 File contained the IP address for a server rented or contracted by Capital One from

2  Amazon, and the number of a port on that server that had been misconfigured, with the result

3  that commands addressed to that IP address and port passed through directly to the server.

4      15.    Capital One determined that the April 21 File contained code for three

5  commands, as well as a list of more than 700 folders or buckets of data.

6      ■ Capital One determined that the first command (which was directed at the

7      misconfigured port), when executed, obtained security credentials for an

8      account known as ISRM-WAF-Role that, in turn, enabled access to certain

9      of Capital One's folders or buckets of data at Amazon.

10      ■ Capital One determined that the second command (the "List Buckets

11      Command"), when executed, used the ISRM-WAF-Role account to list the

12      names of folders or buckets of data in Capital One's storage space at

13      Amazon.

14      ■ Capital One determined that the third command (the "Sync Command"),

15      when executed, used the ISRM-WAF-Role to extract or copy data from

16      those folders or buckets in Capital One's storage space for which the

17      ISRM-WAF-Role account had the requisite permissions.

18      16.    Capital One tested the commands in the April 21 File, and confirmed that the

19  commands did, in fact, function to obtain Capital One's credentials, to list or enumerate

20  folders or buckets of data, and to extract data from certain of those folders or buckets.

21  Capital One confirmed that the more-than-700 folders or buckets of data listed in the April

22  21 File matched the actual names of folders or buckets of data used by Capital One for data

23  stored at Amazon.  Capital One report that its computer logs reflect the fact that the List

24  Buckets Command was in fact executed on April 21, 2019, and that the timestamp in Capital

25  One's logs matches the timestamp in the April 21 File.

26      17.    According to Capital One, its logs show a number of connections or attempted

27  connections to Capital One's server from TOR exit nodes, and a number of connections from

28  IP addresses beginning with 46.246, all of which Capital One believes relate to activity

AFFIDAVIT OF SA MARTINI - 6
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

conducted by the same person involved in the April 21, 2019, intrusion, because they involve unusual communications with the same misconfigured port discussed above. Specifically, according to Capital One, the logs show:

- On or about March 12, 2019, IP address 46.246.35.99 attempted to access Capital One's data. I know, from checking publicly-available records, that this IP address is controlled by IPredator, a company that provides VPN services.

- On or about March 22, 2019, the ISRM-WAF-Role account was used to execute the List Buckets Command several times. These commands were executed from IP addresses that I believe to be TOR exit nodes. According to Capital One, the ISRM-WAF-Role account does not, in the ordinary course of business, invoke the List Buckets Command.

- Also on or about March 22, 2019, the ISRM-WAF-Role account was used to execute the Sync Command a number of times to obtain data from certain of Capital One's data folders or buckets. A number of those commands were executed from IP address 46.246.38.224. I know, from checking publicly-available records, that that IP address also is controlled by IPredator.

- One of the files copied from Capital One's folders or buckets on March 22, 2019, was a file with the name *****c000.snappy.parquet (the "Snappy Parquet File"), and this was the only time the ISRM-WAF-Role account accessed the Snappy Parquet File between January 1, 2019 and July 20, 2019.

- A List Buckets Command was executed on April 21, 2019, from IP address 46.246.35.103. I know, from checking publicly-available records, that the IP address from which this command was executed also is controlled by IPredator. I also believe, based on the timestamp on the April 21, 2019 file, and the time that Capital One reports that the command appears in Capital

AFFIDAVIT OF SA MARTINI - 7
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    One's logs, that this was the command that was the source of the April 21

2    File.

3    18.    According to Capital One, the data copied from Capital One's data folders or

4 buckets includes primarily credit card applications. Although some of the information in

5 those applications (such as Social Security numbers) has been tokenized or encrypted, other

6 information including applicants' names, addresses, dates of birth and information regarding

7 their credit history has not been tokenized. According to Capital One, the data includes large

8 numbers of applications, possibly tens of millions of applications. In addition, according to

9 Capital One, the data includes several hundred thousand applications that include tax returns,

10 including social security numbers, or applicants' income and partial social security numbers,

11 and also includes more than 100,000 records that include bank account information.

12 **B.    Evidence of Thompson's Involvement**

13    19.    As noted above, the GitHub address for the April 21 File includes the name

14 paigeadelethompson. Clicking on the name paigeadelethompson in the address takes the

15 user to the main GitHub page for a Paige Adele Thompson. The profile on that page

16 contains a link to a GitLab page at www.gitlab.com/netcrave (the "GitLab Netcrave Page").

17 The GitLab Netcrave Page includes, among other things, a resume for a "Paige Thompson."

18 That resume indicates that Thompson is a "systems engineer" and formerly worked at

19 Amazon from 2015-16. The resume also lists an address of 6520 28th Avenue South,

20 Seattle, Washington, the address of the SUBJECT RESIDENCE. Based on this evidence, I

21 believe that Thompson is the user of the GitHub and GitLab accounts described herein.

22    20.    An April 19, 2019, post in the GitHub account of "pagieadelethompson"

23 includes a "Server List" of IP addresses associated with the account. All of the IP addresses

24 in the Server List begin with 46.246. I have confirmed by checking publicly-available

25 records that each of the IP addresses in the "Server List" is controlled by IPredator. (As

26 noted above, Capital One reports that its logs reveal malicious activity, including malicious

27 activity on April 19, 2019, that, similarly, comes from several IP addresses beginning with

28

AFFIDAVIT OF SA MARTINI - 8
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

46.246 that, based on publicly available records, are associated with the VPN service IPredator.)

21.    Based on open source research, I am aware of a Meetup group called "Seattle Warez Kiddies" with a Web page located at www.meetup.com\Seattle-Warez-Kiddies.  That page indicates that its organizer is "Paige Thompson (erratic)."  Within that Meetup group is a Slack invitation code for the Slack channel netcrave.slack.com (the "Netcrave Slack Channel").

22.    I have reviewed postings on the Netcrave Slack Channel.  Among other things, on or about June 26, 2019, a user "erratic" posted a list of files that "erratic" claimed to possess.  Among those files, two referenced "ISRM-WAF-Role."  Based on my review of the Sync Command in the April 21 File, and my training and experience, I know that the Sync Command would place extracted files in a directory with the name "ISRM-WAF-Role."  Accordingly, I believe that, "erratic" was claiming to have files extracted using the extraction command set forth in the April 21 File.

23.    On or about June 27, 2019, "erratic" posted about several companies, government entities, and educational institutions.  Among these posts, "erratic" referred to "ISRM-WAF-Webrole" and indicated that account was associated with Capital One.  Based on my training and experience, these communications appear to be references by "erratic" to other intrusions that "erratic" may have committed.

24.    On or about June 27, 2019, another user posted "don't go to jail plz."  In response, "erratic" posted "Im like > ipredator > tor > s3 on all this shit."  I understand this to refer to the method Thompson used to commit the intrusion.  "[E]rratic" also posted "I wanna get it off my server that's why Im archiving all of it lol."

25.    According to a screenshoot that Capital One provided, and that I have reviewed, on or about June 27, 2019, the user "paigeadele" posted, "I've also got a leak proof IPredator router setup if anyone nneds [sic] it," as well as a GitHub link that included "paigeadelethompson" in the link.  I was not able to locate this post on GitHub myself, although that may be because it since has been deleted.

26.     According to a screenshot that Capital One provided, and that I have reviewed, on or about July 4, 2019, the user "paigeadele" posted a message seeking information about the Snappy Parquet File, one of the files exfiltrated from Capital One on March 22, 2019.

27.     On or about July 19, 2019, the user "paigeadele" posted information about one of her pets. Included in the post was an estimate from a veterinarian dated June 10, 2019, provided to "Paige Thompson" at the address 6520 28th Avenue South, Seattle Washington, the address of the SUBJECT RESIDENCE. Based upon the information in the preceding paragraphs, I believe that Thompson is the person who poste under the names "erratic" and "paigeadele" on the Netcrave Slack Channel.

28.     I have learned, from Capital One and through open-source research, of a Twitter account name @0xA3A97B6C, with a username "ERRATIC." I have reviewed photographs posted to the account of "ERRATIC," and they appear to depict the same individual who appears in photographs posted on the Netcrave Slack Channel under the username "paigeadele. I believe that Thompson is the user of the "ERRATIC" Twitter account.

29.     According to a screenshot that Capital One provided, and that I have reviewed, on June 18, 2019, "ERRATIC" posted "Ive basically strapped myself with a bomb vest, fucking dropping capitol ones dox and admitting it. I wanna distribute those buckets i think first." I understand this post to indicate, among other things, that Thompson intended to disseminate data stolen from victim entities, starting with Capital One.

C.      **Evidence that Thompson lives at the SUBJECT RESIDENCE**

30.     As noted above, Thompson's resume on the GitLab Netcrave Page lists Thompson's address as being the SUBJECT RESIDENCE. In addition, a veterinarian's bill sent to her on June 10, 2019, was addressed to her at the SUBJECT RESIDENCE.

31.     I also have reviewed a Seattle Police Department report dated March 24, 2019, that shows that officers responded to the SUBJECT RESIDENCE. That report was classified as a response to "suicide-threats." The report listed three people as living at the SUBJECT RESIDENCE, Thompson, P.Q., and J.E. One of the other residents told officers

1   that Thompson had threatened her, and that Thompson previously has threatened to commit

2   "suicide by cop." Thompson explained her conduct by stating that she was upset that

3   something had gone wrong with her computer.

4      32.   According to land records, P.Q. is the owner of the SUBJECT RESIDENCE. I

5   have conducted surveillance at the SUBJECT RESIDENCE. During the course of that

6   surveillance, I observed three vehicles (which are shown in the picture in Attachment A) at

7   the SUBJECT RESIDENCE. All three of these vehicles are registered to P.Q.

8      33.   Multiple law enforcement officers, including myself, have conducted physical

9   surveillance at the SUBJECT RESIDENCE. On July 26, 2019, surveillance observed

10  Thompson as well as two others, believed to be P.Q. and J.E., at the SUBJECT

11  RESIDENCE.

12     34.   Based on this information, I believe that Thompson currently lives at the

13  SUBJECT RESIDENCE. (Although Thompson's Department of Licensing Record lists her

14  at a different address in Seattle, that listing was last updated on August 31, 2018, and I

15  believe that it is out of date.)

16     35.   I am not aware of any evidence that Thompson currently is employed. (Her

17  resume shows her last employment, at Amazon, as ending in 2016.) As a result, I believe

18  that any computers, and electronic storage media belonging to Thompson are likely also to

19  be found at that address.

20  ## VI.   COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

21     36.   As described above and in Attachment B, this application seeks permission to

22  search for evidence, fruits, and instrumentalities that might be found at the SUBJECT

23  RESIDENCE, in whatever form they are found. One form in which they might be found is

24  data stored on digital devices,[1] such as computers and cellular telephones, and electronic

25

26  [1] "Digital device" includes any device capable of processing and/or storing data in electronic
    form, including, but not limited to:   computer servers, central processing units, laptop,
27  desktop, notebook and tablet computers, drives intended for removable media, related
    communications devices such as modems, routers, and switches, wireless communication
28  devices such as cellular telephones, and iPods/iPads.

1  storage media.[2]  Thus, the warrant applied for would authorize the seizure of digital devices

2  and electronic storage media and, potentially, the copying of electronically stored

3  information from digital devices or electronic storage media, under Rule 41(e)(2)(B).

4       37.  *Probable cause.*  Based upon my review of the evidence gathered in this

5  investigation, my review of data and records, information received from other agents and

6  computer forensics examiners, and my training and experience, I submit that, if a digital

7  device or other electronic storage media is found at the SUBJECT RESIDENCE, there is

8  probable cause to believe that evidence, fruits, and instrumentalities of the crime of computer

9  hacking will be stored on those digital devices and other electronic storage media.  I believe

10  this because the intrusion under investigation was committed through the use of digital

11  devices, and because information stolen from Capital One has been received by digital

12  devices.  Both the intrusion, and the storage of the resulting information, will have resulted

13  in evidence on those digital devices or electronic storage media:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet.  Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because, when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

---

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AFFIDAVIT OF SA MARTINI - 12
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

38.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at the SUBJECT RESIDENCE because:

a. Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude

the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.[1] Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence

---

[1] For example, if the examination of a computer shows that: a) at 11:00am, someone using the computer used an internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child pornography.

on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## VII.  DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

39.  In this case, the evidence suggests that digital devices also been used as instrumentalities of the crime being investigated. Specifically, the intrusion under investigation was committed through the use of digital devices, and the information stolen from Capital One has been received by digital devices. Indeed, the crime being investigated could not have been committed without using digital devices.

## VIII.  PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION

40.  Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent. Indeed, I am concerned that if Thompson becomes aware of the investigation in advance of the execution of a search

1  warrant, she may either (1) attempt to destroy any potential evidence, whether digital or non-
2  digital, thereby hindering law enforcement agents from the furtherance of the criminal
3  investigation, or (2) reveal sensitive financial and other personal information stolen from
4  Capital One.

### IX.   RISK OF DESTRUCTION OF EVIDENCE

5
6      41.    I know based on my training and experience that digital information can be
7  very fragile and easily destroyed.  Digital information can also be easily encrypted or
8  obfuscated such that review of the evidence would be extremely difficult, and in some cases
9  impossible.  If an encrypted computer is either powered off or if the user has not entered the
10 encryption password and logged onto the computer, it is likely that any information
11 contained on the computer will be impossible to decipher.  If the computer is powered on,
12 however, and the user is already logged onto the computer, there is a much greater chance
13 that the digital information can be extracted from the computer.  This is because when the
14 computer is on and in use, the password has already been entered and the data on the
15 computer is accessible.  However, giving the owner of the computer time to activate a digital
16 security measure, pull the power cord from the computer, or even log off of the computer
17 could result in a loss of digital information that could otherwise have been extracted from the
18 computer.

### X.   REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH

19
20     42.    *Necessity of seizing or copying entire computers or storage media.*  In most
21 cases, a thorough search of premises for information that might be stored on digital devices
22 or other electronic storage media requires the seizure of the physical items and later off-site
23 review consistent with the warrant.  In lieu of removing all of these items from the premises,
24 it is sometimes possible to make an image copy of the data on the digital devices or other
25 electronic storage media, onsite.  Generally speaking, imaging is the taking of a complete
26 electronic picture of the device's data, including all hidden sectors and deleted files.  Either
27 seizure or imaging is often necessary to ensure the accuracy and completeness of data
28

recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence. Computer hard drives, digital devices and electronic storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. *Technical requirements.* Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

## XI.   SEARCH TECHNIQUES

43.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices and other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

AFFIDAVIT OF SA MARTINI - 17
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

44.     Because several people share the SUBJECT RESIDENCE as a residence, it is possible that the SUBJECT RESIDENCE will contain digital devices or other electronic storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If agents conclude that any digital device or other electronic storage media is owned, and predominantly used, by a person other than Thompson, agents will seize, but will not conduct any further search of, that digital device or other electronic storage media.  It may be impossible to determine, on scene, which computers contain the things described in this warrant.

45.     Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

**A.     Processing the Search Sites and Securing the Data.**

   a.   Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the subject premises described in Attachment A that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

   b.   In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[1]

---

[1] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties.  Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    c.  A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search locations described in Attachment A will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search locations described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

    d.  If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

**B.  Searching the Forensic Images.**

    a.  Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit. Those techniques, however, may necessarily expose many or all parts of a hard drive

---

Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

AFFIDAVIT OF SA MARTINI - 19
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

to human inspection in order to determine whether it contains evidence described by the warrant.

b. Agents may utilize hash values to exclude certain known files, such as the operating system and other routine software, from the search results. However, because the evidence I am seeking does not have particular known hash values, agents will not be able to use any type of hash value library to locate the items identified in Attachment B.

## XII.   FORFEITURE

46.     This application requests the issuance of a warrant under 21 U.S.C. § 853(f) authorizing the seizure of property subject to forfeiture.  This is appropriate because: (1) there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture, and (2) an order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.  There is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture, because 18 U.S.C. § 1030(i)(1)(A) provides that the defendant's "interest in any personal property that was used or intended to be used to commit or to facilitate the commission of such violation" shall be forfeited to the United States.

//

//

//

AFFIDAVIT OF SA MARTINI - 20
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

### XIII.  CONCLUSION

47.    For the reasons set forth above, there is probable cause to believe that evidence, fruits and/or instrumentalities of computer fraud/hacking, in violation of Title 18, United States Code § 1030(a)(2) and (5), are located in the SUBJECT RESIDENCE, as more fully described in Attachment A to this Affidavit, including on any computers, cellular telephones, and electronic storage media that may be found in the SUBJECT RESIDENCE. I therefore request that the court issue a warrant authorizing a search of SUBJECT RESIDENCE for the items more fully described in Attachment B hereto, and the seizure of any such items found therein.

JOEL MARTINI
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN before me this _____26_____ day of July, 2019.

MARY ALICE THEILER
United States Magistrate Judge

AFFIDAVIT OF SA MARTINI - 21
USAO# 2019R00___

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A

## LOCATION TO BE SEARCHED

The SUBJECT RESIDENCE, depicted in the photograph below, is located at 6520 28th Avenue South, Seattle, Washington, and is a grey one-story house with a partial brick facade on the front, and white window frames and eaves.  The number 6520 appears to the right side of the front door.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B
# ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 1030(a)(2) and (5) for the period from January 1, 2019, to the present:

1. All records relating to any intrusion into servers rented, leased, or contracted by Capital One Financial Corporation ("Capital One") from Amazon.com, Inc. ("Amazon"), or to the exfiltration or theft of data from such servers.

2. All records (including file structures as well as credit card applications, tax returns and bank account information) exfiltrated or stolen from Capital One.

3. All credit card applications, tax returns and bank account information of any person other than (a) Paige Thompson, (b) any other resident of the SUBJECT RESIDENCE, or (c) any family member of either Paige Thompson or any other resident of the SUBJECT RESIDENCE.

4. All records relating to the use of a GitHub account in the name paigeadelethompson.

5. All records relating to the use of IPredator or the TOR network.

6. All records evidencing the use of the nickname or identity "paigeadelethompson."

7. All records relating to the use or, or access to the following services:  Twitter, Slack, GitLab, and Meetup.

8. All records evidencing the use of the nickname or identity "erratic."

9. All records relating to Capital One.

ATTACHMENT B - 1
USAO# 2019R00675

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.   All records relating to Amazon, including to any prior employment at Amazon.

11.   All records relating to any intrusion into the servers of any company, educational institution, or governmental entity, at Amazon or elsewhere, or to the exfiltration or theft of data from such servers.

12.   All computers, notebook computers, laptop computers, and electronic storage media and/or their components, which include:

    a.   Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

    b.   Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

    c.   Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

    d.   Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

    e.   Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

    f.   Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

    g.   Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

13.   Any digital devices or electronic storage media that were or may have been used as a means to commit the offenses described on the warrant, including computer fraud/hacking in violation of 18 U.S.C. § 1030(a)(2) and (5).

14.   For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be

ATTACHMENT B - 2
USAO# 2019R00675

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

contained, or that may contain things otherwise called for by this warrant:

a.     evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.     evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.     evidence of the lack of such malicious software;

d.     evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f.     evidence of the times the digital device or other electronic storage media was used;

g.     passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

h.     documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media; and

i.     contextual information necessary to understand the evidence described in this attachment.

15.     Records and things evidencing communication with an Internet Protocol address controlled by IPredator or with the TOR network:

a.     routers, modems, and network equipment used to connect computers to the Internet;

b.     records of Internet Protocol addresses used and connected to;

c.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the

ATTACHMENT B - 3
USAO# 2019R00675

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

user entered into any Internet search engine, and records of user-typed web addresses.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

THIS WARRANT AUTHORIZES THE SEIZURE OF DIGITAL DEVICES AND OTHER ELECTRONIC STORAGE MEDIA FOUND IN THE SUBJECT RESIDENCE THAT APPEAR TO BE OWNED, AND PREDOMINANTLY USED, BY A PERSON OTHER THAN PAIGE THOMPSON, BUT IT DOES NOT AUTHORIZE THE FURTHER SEARCH OF THOSE DEVICES (WHICH SHALL REQUIRE THE ISSUANCE OF A FURTHER SEARCH WARRANT AUTHORIZING SUCH ACTUAL SEARCH).

ATTACHMENT B - 4
USAO# 2019R00675

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970